IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANGELA TRIMBLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-3376-CV-S-GAF-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff, Angela Trimble, appeals the denial of his application for supplemental security income (SSI) based on disability under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381, *et seq*. Plaintiff protectively filed her application for SSI benefits under Title XVI of the Act on December 14, 2004. Plaintiff's application was denied initially. On May 1, 2007, following a hearing, an administrative law judge (ALJ) found that Plaintiff was not under a "disability" as defined in the Act. On August 19, 2008, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner subject to appeal.

Plaintiff was born in 1970 and alleged that she became disabled beginning July 16, 2003. Plaintiff alleged disability due to pain, arm numbness, a herniated disc, and depression. She completed one year of college and previously worked as a motel manager, secretary, waitress, and bank employee.

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Finch v. Apfel*, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a

preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *See Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). Evidence that both supports and detracts from the Commissioner's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *See Finch*, 547 F.3d at 935 (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)). A court should disturb the ALJ's decision only if it falls outside the available "zone of choice," and a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the fact finder in the first instance. *See Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citations omitted). The Eighth Circuit has further noted that a court should "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari,* 255 F.3d 577, 581 (8th Cir. 2001).

To establish entitlement to benefits, Plaintiff must show that she was unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d) and 1382c(a)(3)(A).

The ALJ found Plaintiff had the following severe impairments: disorders of the back, disorders of muscle, and headaches. Plaintiff was not found to have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. § 404, Subpart P, Appendix 1, Regulations No. 4. The ALJ then determined that Plaintiff retained the

ability to perform her past relevant work. Consequently, the ALJ found Plaintiff was not disabled.[1]

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process in finding that her depression was not a severe impairment because it did not have more than a de minimus effect on her ability to perform substantial gainful activity on a sustained basis.

A severe impairment is an impairment or combination of impairments which significantly limits a claimant's physical or mental ability to perform basis work activities without regard to age, education, or work experience. *See* 20 C.F.R. §§ 416.920(c) and 416.921(a) (2009). Plaintiff bears the burden of establishing that she has a severe impairment. *See Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996). Further, objective medical evidence must confirm that an impairment is severe. *See* Social Security Ruling (SSR) 96-3p. A diagnosis alone is an insufficient basis for a finding that an impairment is severe. The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality. *See, e.g., McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Moreover, 20 C.F.R. § 416.909 states that, unless an impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months.

Here, during the relevant time period, Plaintiff did not seek any mental health treatment until March 2, 2007, when she presented to Ms. Thompson, who diagnosed depression. As the ALJ noted, other than Ms. Thompson's single diagnosis, the record contains no evidence that

---

[1] Upon review of the record and the law, the Defendant's position is found to be persuasive. Much of the Defendant's brief is adopted without quotation designated.

Plaintiff was diagnosed with depression or required any medical treatment or hospital confinement as a result of depression.  There is also no indication in the record that Plaintiff received any ongoing mental health treatment, or that she sought mental health treatment but was denied such treatment due to an inability to pay.  *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged . . . mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."). The evidence of record indicates that Plaintiff's mental status was repeatedly normal, and she had no mood or affect abnormalities.  Similarly, the mental status examination performed by Ms. Thompson indicated that Plaintiff had "good" attention, intact memory and concentration, and normal speech, behavior, and thought process.  Further, none of Plaintiff's treating physicians indicated that a mental impairment significantly limited her ability to do basic work activities.

Plaintiff argues that the ALJ failed to properly evaluate Ms. Thompson's assessment as required by SSR 06-03p and erred by affording her assessment no weight.  However, the record reflects the ALJ properly evaluated Ms. Thompson's assessment and correctly determined that her assessment was entitled to no weight because it was inconsistent with and unsupported by the medical evidence of record and based on Plaintiff's subjective statements.

Pursuant to SSR 06-03p, Ms. Thompson, a mental health counselor, is not an "acceptable medical source."  *See* SSR 06-03p, 2006 WL 2329939 at *2.  As such, Ms. Thompson's assessment cannot be afforded controlling weight.  *See id*.  However, as Plaintiff correctly notes, SSR 06-03p indicates that the ALJ should consider an assessment from a non-acceptable medical

4

source. *See id*. at *2-5.  In this case, although the ALJ ultimately afforded Ms. Thompson's assessment no weight, he did consider her assessment.

As discussed above, contrary to Ms. Thompson's assessment, Plaintiff's mental status was repeatedly normal, and she had no mood or affect abnormalities.  Similarly, the mental status examination performed by Ms. Thompson indicated that Plaintiff had "good" attention, intact memory and concentration, and normal speech, behavior, and thought process.  Additionally, Ms. Thompson indicated that she had not reviewed any medical records and her diagnosis of depression was based on Plaintiff's self-reported symptoms.  *See Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is not supported by diagnoses based on objective evidence will not support a finding of disability.") (citation and internal quotation omitted).  Accordingly, the ALJ properly determined that Ms. Thompson's assessment was not supported by the evidence of record and was not entitled to weight.  *See Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion.").

Further, contrary to Plaintiff's assertion, there is no indication in the record that the ALJ failed to consider the "nature of the relationship" between Ms. Thompson and Plaintiff or Ms. Thompson's specialty as required by SSR 06-03p.  As the ALJ correctly noted, the record indicates that Plaintiff sought mental health treatment from Ms. Thompson on one occasion and Ms. Thompson was a mental health counselor.  The ALJ properly considered Ms. Thompson's opinion as required by SSR 06-03p.

5

The ALJ did not commit error by failing to find that Plaintiff's depression was a severe impairment. As discussed above, the medical evidence of record supports the ALJ's determination.

Plaintiff argues further that the ALJ's RFC assessment is improper because it is not supported by medical evidence and appears to be based on the RFC assessment of the consultative examiner Dr. Zhai. A claimant's RFC represents the most she can do despite the combined effect of all her credible limitations. *See* 20 C.F.R. § 416.945 (2009). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir.1995)). An ALJ must assess a claimant's RFC based on all the record evidence, including the medical records, observations of treating and examining physicians, and an individual's own descriptions of her limitations. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

An ALJ, however, is not required to accept a claimant's alleged limitations at face value. Instead, the ALJ must evaluate the credibility of a claimant's complaints of limitation consistent with the framework set forth at 20 C.F.R. § 416.929 (2009), and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). That framework requires consideration of such factors as the claimant's work history; observations by third parties and physicians regarding the claimant's disability; the claimant's activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; and the dosage, effectiveness and side effects of medications. *See Polaski*, 739 F.2d at 1322. Where, as here, an ALJ discredits a claimant's testimony for stated reasons, a reviewing court should normally defer to the ALJ's credibility findings. *See Russell v. Sullivan,* 950 F.2d

6

542, 545 (8th Cir. 1991). Further, although an ALJ must consider the various medical opinions in assessing a claimant's RFC, the final determination of a claimant's RFC is left to the ALJ. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner."). In assessing a claimant's RFC, the ALJ may reject the opinion of any examining physician if it is inconsistent with substantial evidence. *See Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004).

In this case, after evaluating the medical evidence of record, and assessing the credibility of Plaintiff's subjective complaints consistent with the framework set forth in *Polaski* and 20 C.F.R. § 416.929, the ALJ found that Plaintiff could perform medium work and frequently climb, balance, kneel, crouch, crawl, and stoop.[2] Substantial evidence, including medical evidence, supports the ALJ's RFC assessment.

As the ALJ discussed in his decision, despite Plaintiff's alleged inability to work, the evidence of record contains only minimal objective findings. For example, physical examinations revealed normal sensation, normal motor strength, normal gait, full range of motion of the extremities, full range of motion of the lumbosacral and cervical spines, and "strong" bilateral hand grips. Plaintiff also had negative straight leg raises. In September 2003, Dr. Paff noted that Plaintiff "jumped up and seemed to be able to move without any difficulty." In February 2005, Dr. Acosta-Rodriguez noted that a neurological examination was "completely negative" and there was no evidence for radiculopathy. Similarly, in February 2007, a sensory

---

[2]In fact, the ALJ's RFC assessment is more restrictive than Dr. Zhai's RFC assessment, which indicated that Plaintiff had no limitations whatsoever.

7

and neurological examination was "totally normal," and Dr. Zhai noted that Plaintiff had full range of motion of her neck and all extremities. Further, cervical and lumbar spine x-rays revealed no evidence of fracture, deformity, or malalignment of vertebral bodies, and only "mild" narrowing of the C5-6 disc space. An MRI revealed only "moderate" left posterior paracentral disc herniation at C5-6 and "very small" posterior central disc herniation at C3-4, which Dr. Acosta-Rodriguez opined was not Plaintiff's "primary problem." Multiple CT scans of Plaintiff's head were also normal. Additionally, consistent with the ALJ's RFC assessment, Dr. Acosta-Rodriguez opined that Plaintiff's ability to sit, stand, and walk would not be altered by her impairments, and Dr. Zhai opined that Plaintiff had no lifting, carrying, standing, walking, sitting, pushing, pulling, postural, or manipulative limitations. Moreover, as the ALJ noted, it is significant that no physician who treated Plaintiff found limitations consistent with disability. *See Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 964-65 (8th Cir. 1996) (lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability)).

In addition to the objective medical evidence discussed above, the ALJ considered other inconsistencies in the record as a whole in formulating Plaintiff's RFC. *See Stephans v. Shalala,* 46 F.3d 37, 39 (8th Cir. 1995) (per curiam) ("Where there are inconsistencies in the evidence as a whole, the [Commissioner] may discount subjective complaints."). As the ALJ noted, contrary to her complaints of right hip pain at the administrative hearing, when Plaintiff presented to the emergency room after her July 2003 accident, she complained of pain and tenderness in the

8

posterior left hip. Similarly, Dr. Paff noted that, although an MRI revealed findings on the left side of Plaintiff's cervical spine, Plaintiff's alleged symptoms were on the right side. Dr. Acosta-Rodriguez also noted that he found "a great discrepancy in the distribution" when he compared Plaintiff's pain diagram to her pain complaints. Additionally, as the ALJ noted, despite Plaintiff's claims that she could not afford her medications or medical treatment, Plaintiff managed to obtain funds to purchase cigarettes and smoked at least one-half package of cigarettes per day. *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (finding that Plaintiff's claim, that he could not afford medication, was inconsistent with the fact that he did not seek any treatment offered to indigents, nor did he choose to forgo smoking three packages of cigarettes each day to help finance pain medication).

The ALJ also considered Plaintiff's poor work record. From 1991 to 2001, Plaintiff had seven years of no earnings, and she earned less $6,000 in all but one year. An ALJ may discount a claimant's credibility based upon her poor work record. *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (finding that a plaintiff's prior work history characterized by fairly low earnings and significant breaks in employment casts doubt on his credibility).

Next, Plaintiff argues that the ALJ's RFC assessment failed to properly consider her headaches, decreased range of motion of the neck, and difficulty using her hands due to radiculopathy. Contrary to Plaintiff's assertion, the record reflects that the ALJ explicitly discussed her alleged headaches, decreased range of motion of the neck, and hand and arm numbness. However, as discussed above, physical examinations revealed normal sensation, normal motor strength, normal gait, full range of motion of the extremities, full range of motion of the lumbosacral and cervical spines, and "strong" bilateral hand grips. Additionally,

9

neurological examinations were normal, and Dr. Acosta-Rodriguez noted that there was no evidence for radiculopathy. The ALJ properly considered Plaintiff's medical conditions.

Plaintiff also argues that the ALJ failed to consider the effects of her non-severe mental impairments when assessing RFC as required by SSR 96-8p. Contrary to Plaintiff's assertion, the ALJ properly formulated her RFC after considering all of Plaintiff's impairments, including impairments that were not severe. The ALJ explicitly acknowledged that, in determining Plaintiff's RFC, he was required to consider all of Plaintiff's impairments, including non-severe impairments. Further, in his decision, the ALJ specifically discussed the evidence of record regarding Plaintiff's alleged depression. However, as discussed above, Plaintiff did not seek any mental health treatment until March 2, 2007, when she presented to Ms. Thompson, who diagnosed depression. Other than Ms. Thompson's single diagnosis, the record contains no evidence that Plaintiff was diagnosed with depression or required any medical treatment or hospital confinement as a result of depression. Moreover, none of Plaintiff's treating physicians indicated that a mental impairment significantly limited her ability to do basic work activities. Thus, the ALJ fully considered all of Plaintiff's impairments, including non-severe impairments, in the RFC assessment.

The ALJ properly determined Plaintiff's RFC after evaluating all the evidence of record regarding the effects of her impairments. The ALJ's RFC assessment is supported by substantial evidence in the record, including medical evidence, and should be affirmed. The ALJ properly determined that Plaintiff could perform his past relevant work.

Plaintiff argues finally that the ALJ improperly determined that she could perform her past relevant work. Specifically, Plaintiff argues that the ALJ failed to properly consider

10

the functional demands of her past relevant work and compare them to her RFC.

In his opinion, the ALJ expressly noted the vocational expert's testimony that, based on the Dictionary of Occupational Titles (DOT), Plaintiff's jobs of office clerk and lodging facilities attendant were classified as semi-skilled light work and semi-skilled medium work, respectively. The ALJ also noted that the vocational expert's opinions were qualified, credible, and consistent with the DOT. The ALJ then stated that, after comparing Plaintiff's RFC with the physical and mental demands of her past work, she was capable of performing such work as it was actually and generally performed. *See Lowe v. Apfel,* 226 F.3d 969, 973 (8th Cir. 2000) ("Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled."). The ALJ made specific findings with regard to the mental (semi-skilled) and physical (light and medium) demands of the jobs of office clerk and lodging facilities attendant. Because the ALJ relied on both the DOT and the vocational expert's testimony in concluding that Plaintiff could perform her past work, the ALJ clearly was not required to further articulate the functional demands of Plaintiff's previous jobs. *See Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999) ("The ALJ must also make explicit findings regarding the actual physical and mental demands of the claimant's past work. The ALJ may discharge this duty by referring to the specific job descriptions in the [DOT] that are associated with the claimant's past work." (internal quotations and citations omitted)). Consequently, the ALJ properly found that Plaintiff could perform her past relevant work and was not under a "disability" as defined in the Act.

In support of her argument that the ALJ failed to properly consider the mental demands of her past work, Plaintiff relies on *Salts v. Sullivan,* 958 F.2d 840 (8th Cir. 1991). Plaintiff's reliance is misplaced. In *Salts*, the claimant had uncontroverted mental deficits, and the ALJ failed to consider the mental demands that the claimant's past work would place on him. *See id.* at 845. As a result, the Court found that the ALJ needed to develop the record with respect to the mental demands of the claimant's past relevant work. See id. at 846. In this case, unlike *Salts,* the ALJ expressly considered Plaintiff's alleged mental impairments, determined her mental impairments were non-severe, and included no mental limitations in the RFC assessment. As discussed above, the ALJ also expressly considered the mental (semi-skilled) demands of Plaintiff's past relevant work.

Plaintiff also incorrectly asserts that the ALJ relied exclusively on vocational expert testimony to compare the demands of her past work with her RFC. As an initial matter, the Commissioner notes that, although not required to do so, an ALJ may properly rely upon vocational expert testimony at step four of the sequential evaluation process. *See* 20 C.F.R. § 416.960(b)(2) (2009) (". . . we may use the services of vocational experts or vocational specialists. . . to obtain evidence we need to help us determine whether you can do your past relevant work."). *See also Miles v. Barnhart,* 374 F.3d 694, 700 (". . .vocational testimony is not required at step four.. ."). In this case, contrary to Plaintiff's assertion, the ALJ did not rely exclusively on vocational expert testimony to compare the demands of Plaintiff's past work with her RFC. Rather, the ALJ relied on vocational expert testimony, in part, to determine the

12

physical and mental demands of Plaintiff's past work. The ALJ then compared the physical and mental demands of Plaintiff's past work, as described by the vocational expert and the DOT, to Plaintiff's RFC. Because Plaintiff retained the ability to perform medium work and her past work was classified as semiskilled light and semi-skilled medium, the ALJ determined that Plaintiff retained the ability to perform her past relevant work. The ALJ's decision is supported by substantial evidence.

WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

<u>s/ Gary A. Fenner</u>
Gary A. Fenner, Judge
United States District Court

DATED: October 6, 2009